**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JONATHAN ALVAREZ; EMANUEL
JIMINEZ; SHAUN MCCRACKEN;
HOUSAM MOUMNE; MOHAMMAD
MOUMNE; KENT COCHRAN, on
behalf of themselves and all others
similarly situated,
　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

CHEVRON CORPORATION; CHEVRON
USA, INC.; EXXON MOBIL
CORPORATION; CONOCOPHILLIPS
COMPANY; BP CORPORATION NORTH
AMERICA, INC.; BP PRODUCTS
NORTH AMERICA, INC.; BP WEST
COAST PRODUCTS, LLC; BP NORTH
AMERICAN PETROLEUM, INC.; SHELL
OIL COMPANY; SHELL OIL PRODUCTS
COMPANY; EQUILON ENTERPRISES,
LLC; VALERO ENERGY
CORPORATION; VALERO CALIFORNIA
RETAIL COMPANY,
　　　　　　*Defendants-Appellees.*

No. 09-56698

D.C. No.
2:09-cv-03343-
GHK-CW

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted
February 8, 2011—Pasadena, California

Filed September 1, 2011

16701

Before: Stephen Reinhardt, Johnnie B. Rawlinson, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Rawlinson

**COUNSEL**

Robert K. Friedl and Behram V. Parekh (argued), Kirtland & Packard LLP, El Segundo, California, for the plaintiffs-appellants.

Darius C. Ogloza (argued), Latham & Watkins LLP, San Francisco, California, for Chevron USA, Inc.; Julian Brew, Kaye Scholer LLP, Los Angeles, California, for Exxon-Mobile Corp.; Corey C. Watson, Kirkland & Ellis LLP, Los Angeles, California, for BP Products North America Inc., BP North American Petroleum, and BP West Coast Products, LLC; Andrew M. Edison, Edison McDowell & Hetherington LLP, Houston, Texas, for Valero California Retail Co. and Valero Energy Corp.; Robin A. Wofford and Hubert Kim,

Wilson Turner Kosmo LLP, San Diego, California, for Shell Oil Co., Shell Oil Products Co., and Equilon Enterprises, LLC; Joseph W. Bell, Zelle Hoffmann Voebel & Mason LLP, San Franciso, California, for Conocophillips Co.

## OPINION

RAWLINSON, Circuit Judge:

Appellants Jonathan Alvarez, Emanuel Jiminez, Shaun McCracken, Housam Moumne, Mohammad Moumne, and Kent Cochran (collectively Plaintiffs), appeal the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of their putative consumer class action against Chevron USA, Inc., Exxon-Mobile Corp., Conocophillips Co., BP Products North America Inc., BP West Coast Products, LLC, Equilon Enterprises, LLC, Shell Oil Co., and Valero California Retail Co. (collectively Defendants). Plaintiffs also appeal the district court's denial of leave to amend their second amended complaint.

Plaintiffs' Second Amended Complaint alleged that the design of Defendants' retail gasoline dispensers was fundamentally flawed due to a residual fuel occurence: when Plaintiffs purchased premium grade fuel, they received between two and three-tenths of a gallon of residual fuel from the previous transaction, and therefore were overcharged when the previous purchaser had selected mid-range or regular grade fuel. Plaintiffs sought to have Defendants remedy this situation by developing a more accurate dispenser or pricing technology, or displaying disclosures at the point of purchase. These allegations fueled Plaintiffs' common law and statutory consumer protection claims.[1]

---

[1]Like the district court, we conclude that Plaintiffs did not properly present for decision any claims under Texas law, and thus we apply only California law.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the district court's dismissal of Plaintiffs' second amended complaint without leave to amend because the district court committed no legal error.

## I.   BACKGROUND

### A.   Plaintiffs' Allegations[2]

Defendants sell motor fuel to retail customers at gas stations throughout the United States. Plaintiffs are six individual retail purchasers of "motor fuel with an advertised octane rating of 91 or higher, which was advertised, marketed, distributed, and/or sold, by Defendants . . ."

Plaintiffs alleged that Defendants use single-nozzle gasoline dispensers at their gas stations that are less expensive to install and maintain than the previous multi-nozzle variety. Plaintiffs took issue with these single-nozzle dispensers because these nozzles create the residual fuel problem described above.

Plaintiffs alleged that Defendants could and should remedy the residual fuel problem, and proposed three remedies. First, Plaintiffs asserted that "Defendants could implement technological devices that would enable a multi-grade single nozzle pump to deliver 100% of the grade of gasoline contracted for, yet such technology has not been implemented." Plaintiffs conceded, however, that "technology to completely eliminate the [residual fuel problem] may turn out not to be cost-effective or feasible." In the alternative, Plaintiffs alleged that Defendants could install technology to charge customers at a lower price for any lower-grade residual fuel pumped for a prior transaction. Third, as a remedy of last resort, Plaintiffs sought the addition of corrective disclosures to the gas

---

[2]These allegations are taken from Plaintiffs' Second Amended Complaint.

pumps' electronic display screens that would alert customers to the residual fuel situation. Plaintiffs submitted no further factual allegations regarding these suggested remedies.

## B. California's Regulation of Gasoline Dispensing Devices

### 1. Inspection and Certification of Gasoline Dispenser Designs

The California Department of Food and Agriculture's Division of Measurement Standards (DMS) regulates retail gasoline dispensing. *See* Cal. Bus. & Prof. Code §§ 12100, 13590, 12500(a)-(b). Any design of commercial weighing and measuring devices must be submitted to DMS for certification that the submitted design meets the requirements of California's regulatory regime. *See* Cal. Bus. & Prof. Code § 12500.5. If a device is inspected and deemed lawful, or "correct," it is marked with a seal to be displayed to customers, identifying it as such. *See* Cal. Bus. & Prof. Code §§ 12505, 12500(c) (defining "correct" as meeting all requirements of California law). It is illegal to sell or use commercially any weighing or measuring device "of a type or design which has not first been so approved . . ." Cal. Bus. & Prof. Code § 12500.5.

### 2. Handbook 44 Standards: Restrictions on Draining and Price-Changing

California's technical requirements for commercial weighing and measuring "adopt, by reference, the latest standards as recommended by the National Conference on Weights and Measures [NCWM] and published in the National Institute of Standards and Technology [NIST] Handbook 44 'Specifications and Tolerances, and other Technical Requirements for Weighing and Measuring Devices [Handbook 44][.]' " Cal. Bus. & Prof. Code § 12107; *see* Cal. Code Regs. tit. 4, § 4000.[3]

---

[3]Handbook 44 has been published annually since 1949, "following the Annual Meeting of the [NCWM]. . . . NIST has a statutory responsibility

To earn the mandatory seal of approval from DMS, weighing and measuring devices sold or used commercially in California must conform to Handbook 44. *See* Cal. Code Regs. tit. 4, § 4000.

Handbook 44 standards require two pertinent dispenser design features. First, discharging or draining of gasoline from the meter or hose is prohibited. Second, if dispensers offer multiple grades of gasoline at different prices per grade, "the selection of the unit price shall be made prior to delivery using controls on the device or other customer-activated controls. A system shall not permit a change to the unit price during delivery of [the] product." NIST Handbook 44 S.1.6.5.4.

### 3. *California Air Resources Board Requirements of Single-Nozzle, Single-Hose Dispensers*

In addition to complying with the requirements of the DMS, gasoline service stations must conform to the requirements of the California Environmental Protection Agency Air Resources Board (ARB). The ARB's "Certification Procedure for Vapor Recovery Systems at Gasoline Dispensing Facilities . . . [ARB CP-201][,]" is incorporated by reference into the California Administrative Code. Cal. Code Regs. tit. 17, § 94011. To earn this certification, all facilities installed since 2003 must use single-nozzle, single-hose gasoline dispensers. *See* ARB CP-201, § 4.11 (Feb. 9, 2005).[4]

---

for 'cooperation with the states in securing uniformity of weights and measures laws and methods of inspection' . . ." including the annual publication of the NCWM's recommendations in Handbook 44. The NCWM considered the residual fuel problem posed by single-nozzle, multi-grade gasoline dispensers in its 1989 report, published by NIST, and nevertheless recommended them over alternative systems.

[4]The most recently amended version of ARB CP-201 is available through the website of the California Environmental Protection Agency Air Resources Board. *See* http://www.arb.ca.gov/testmeth/vol2/cp201_ feb2005.pdf (last visited Feb. 17, 2011).

## C. Procedural History

Plaintiffs' Second Amended Complaint in this diversity action presented six claims under California law: (1) breach of contract; (2) breach of the duties of good faith and fair dealing; (3) breach of express and implied warranties; (4) a claim predicated on California's Consumer Legal Remedies Act (CLRA), California Civil Code § 1770 *et seq.*; (5) a claim predicated on California's Unfair Competition Law (UCL), California Business and Professions Code § 17200 *et seq.*; and (6) a claim predicated on California's False Advertising Law (FAL), California Business and Professions Code § 17500 *et seq.* Defendants, in turn, filed a joint motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Defendants presented four grounds for dismissal. Defendants first argued that California's regulatory scheme precluded any liability for the residual fuel problem because it mandates the dispenser and pricing features to which Plaintiff objected. Second, Defendants contended that Plaintiffs' common law claims should be dismissed because they failed to comply with statutory notice requirements, and because Plaintiffs' claim alleging breach of the duties of good faith and fair dealing was duplicative of their breach of contract claim. Third, Defendants argued that any claim or relief that would mandate additional or different disclosures for octane labels was preempted by the federal Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2821-2824, and the Federal Trade Commission's (FTC's) Posting Rule, 16 C.F.R. § 306.1 *et seq.* Finally, Defendants argued that the court should abstain from deciding the case under California's equitable abstention doctrine, because the relief sought "would embroil the Court in economic and policy determinations and monitoring activities already governed by a comprehensive [state] regulatory scheme."[5]

---

[5]The district court found adequate grounds for dismissing each of Plaintiffs' claims without addressing Defendants' equitable abstention argu-

The district court granted Defendants' motion without argument, dismissing Plaintiffs' Second Amended Complaint in its entirety without leave to amend. Judgment was entered, and Plaintiffs timely appealed.

## II. STANDARDS OF REVIEW

We review *de novo* the district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

> [W]e begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. We disregard threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. After eliminating such unsupported legal conclusions, we identify well-pleaded factual allegations, which we assume to be true, and then determine whether they plausibly give rise to an entitlement to relief. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; that is, plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id*. (citations, alterations and internal quotation marks omitted); *see Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009).

---

ment. Defendants presented the same four central grounds for affirming the district court's dismissal in their brief to this court. Like the district court, we do not find it necessary to reach Defendants' equitable abstention argument.

We review the district court's denial of leave to amend a complaint for abuse of discretion. *See Telesaurus VPC, LLC*, 623 F.3d at 1003.

## III.   DISCUSSION

### A.   Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)

Plaintiffs' claims rest on one central allegation, as stated succinctly by the district court:

> Defendants fail to deliver 100 percent of the fuel at the octane rating advertised when Plaintiffs purchase fuel at a higher octane rating than the previous customer at a single-nozzle pump. Plaintiffs argue that they are paying for approximately 0.2-0.3 gallons of 'residual fuel,' which is not drained or diverted, at the higher per gallon price, and hence, are allegedly overcharged.

Defendants similarly rely on one central ground to support dismissal of the complaint: the residual fuel situation stems from the mandated design of gasoline dispensers that are certified as lawful by California regulators. Plaintiffs' claims, argue Defendants, seek relief that cannot be granted because Defendants may not alter their dispenser designs, price computation mechanisms, or octane disclosures without running afoul of various legal requirements in this heavily regulated arena.

We agree with the district court that Plaintiffs' well-pleaded factual allegations, accepted as true, do not give rise to a reasonable inference that Defendants have committed any misconduct for which we may grant relief. Plaintiffs' common law claims were properly dismissed for failure to provide reasonable notice. Plaintiffs' statutory claims under the CLRA and UCL fail because Defendants' conduct is clearly permit-

ted by California law, and Defendants therefore are entitled to safe harbor from liability under these broad consumer protection statutes. Plaintiffs' claim under the FAL fails because it is expressly preempted by the PMPA and the FTC's Posting Rule. Accordingly, Plaintiffs' complaint "fail[ed] to state a claim upon which relief can be granted[.]" Fed. R. Civ. Proc. 12(b)(6).

### 1. Plaintiffs Failed to Provide Reasonable Notice Regarding the Common Law Claims

Plaintiffs' claims for breach of contract and breach of warranty allege, generally, that Defendants have breached their sales contract obligations by failing to deliver the specific, contracted-for number of gallons at the posted fuel grade.[6] The district court properly dismissed these common law claims because Plaintiffs failed to provide Defendants with reasonable notice. *See* Cal. Com. Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy[.]").

[1] To avoid dismissal of a breach of contract or breach of warranty claim in California, "[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (citations omitted); *see also id.* at 1142-43 (construing reasonable notice in California as "pre-suit notice"). The purpose of giving notice of breach is to allow the breaching party

---

[6]We do not address Plaintiffs' claim for breach of the duties of good faith and fair dealing fails because it is duplicative of Plaintiffs' breach of contract claim. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same . . . relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

to cure the breach and thereby avoid the necessity of litigating the matter in court. *See Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008) (*Cardinal Health*). This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice. For that reason, we agree with the district court in *Stearns* that the notice requirement means pre-suit notice. In this case, Plaintiffs alleged only that they "gave notice to Defendants to correct this breach upon learning of this breach by letter to Defendants and by the filing of the instant action." This allegation fails to satisfy California's pre-suit notice requirement in light of the undisputed evidence that Plaintiffs sent their notice letter simultaneously with the complaint.

In support of their argument that their letter provided reasonable notice, Plaintiffs rely on *Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172, 173-74 (9th Cir. 1961). In *Hampton*, we concluded that notice need not precede the filing of the original complaint to be reasonable under California's statutory requirement, so long as it otherwise is given within a reasonable time. *See id*. Subsequent to that 1961 decision, however, California courts[7] have disagreed with our construction of California Commercial Code section 2607(3)(A). *See Cardinal Health*, 169 Cal. App. 4th at 137. The California Court of Appeal explained that a pre-suit notice requirement best satisfies the statutory objectives of § 2607(3)(A) by allowing sellers "to repair or remedy the problem" by providing the opportunity to negotiate a settlement, and by affording

---

[7]"We are bound by pronouncements of the California Supreme Court on applicable state law, but in the absence of such pronouncements, we follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010), *as amended* (citation omitted). Here we are bound by the decision of the California Court of Appeal because there is no California Supreme Court decision on point, and no indication that the California Supreme Court would disagree with the construction of the statutory notice requirement set forth in *Cardinal Health*.

time to prepare for litigation by preserving relevant evidence. *Id.*

**[2]** "Our duty as a federal court in this case is to ascertain and apply the existing California law." *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008) (citation and internal quotation marks omitted). "As our previous interpretation of California law, [*Hampton*] is only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect. [*Cardinal Health*] indicates that our interpretation was incorrect." *Id.* (citation and internal quotation marks omitted). We therefore must conclude that Plaintiffs failed to plead that they provided reasonable notice under § 2607(3)(A) because their notice letter was sent to Defendants simultaneously with service of the complaint. *See Cardinal Health,* 169 Cal. App. 4th at 137 ("The first time Cardinal provided any notice to T & B was when Cardinal served its lawsuit on T & B. This did not comply with the statutory requirement.").

### 2. Safe Harbor from Liability Pursuant to California's Unfair Competition Law and Consumer Legal Remedies Act

Plaintiffs' statutory claims under the UCL and CLRA allege, generally, that Defendants' use of devices resulting in retention of residual fuel constitutes an unlawful and/or deceptive business practice. *See* Cal. Bus. & Prof. Code § 17200*; see also* Cal. Civ. Code § 1770(a). Defendants counter that these statutory claims fail because Defendants are entitled to safe harbor from liability insofar as their challenged business practices are clearly permitted—and indeed are certified to be lawful—under California's regulatory regime.

**[3]** The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . ." Cal. Bus. & Prof. Code

§ 17200. Plaintiffs allege that the residual fuel situation amounts to an unlawful business practice,[8] and seek injunctive relief,[9] including requiring Defendants to replace their gasoline dispensing systems to eliminate residual fuel, to change their billing and pricing systems so that customers are charged accurately for the grade and quantity of gasoline they pump, or to add additional disclosures on all gasoline dispensers notifying customers of the existing residual fuel in the hose.

**[4]** Plaintiffs' UCL claim was properly dismissed by the district court pursuant to California's safe-harbor doctrine because "courts may not use the unfair competition law to condemn actions the Legislature permits." *Cel-Tech*, 973 P.2d at 542.

> Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has *permitted* certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

---

[8]"By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) (*Cel-Tech*) (citation and internal quotation marks omitted). Moreover, even absent an independently actionable legal violation, "[t]he statutory language [of the UCL] . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Id.* at 540.

[9]Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *Cel-Tech*, 973 P.2d at 539 (citations omitted).

*Id.* at 541 (emphasis added). The allegedly unfair business practice in this case is the residual fuel resulting from a DMS-certified dispenser design. California law unequivocally permits Defendants' conduct, therefore affording safe harbor from UCL liability.

**[5]** The CLRA similarly proscribes various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . ." Cal. Civ. Code § 1770(a). Plaintiffs asserted that Defendants violated the CLRA by causing, and failing to disclose, the residual fuel situation. However, we agree with the district court that "[t]he California regulatory framework creates specific requirements [for retail gasoline dispensing] that may not be trumped by the general prohibitions of the CLRA[,]" and that Defendants therefore were entitled to safe harbor from Plaintiffs' CLRA claims. *See Bourgi v. W. Covina Motors, Inc.*, 166 Cal. App. 4th 1649, 1658-60 (2008) (applying safe harbor provisions of Vehicle Code to claims brought under the CLRA).

### 3. The Claim Predicated on California's False Advertising Law is Expressly Preempted by the Petroleum Marketing Practices Act and the Federal Trade Commission's Posting Rule

The FAL provides in pertinent part:

> It is unlawful for any . . . corporation . . . to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, . . . which is untrue or misleading, and which is known, or which by the exercise of rea-

sonable care should be known, to be untrue or mis-
leading . . .

Cal. Bus. & Prof. Code § 17500. Plaintiffs alleged that Defen-
dants violated the FAL when they "advertised motor fuel for
sale as having a minimum octane rating when, in reality, the
initial 0.2-0.3 gallons of such motor fuel sold had a lower
octane rating due to the residual fuel [situation] . . ." The dis-
trict court concluded that Plaintiffs' FAL claim was expressly
preempted by federal law governing octane disclosures. We
agree.

[6] The PMPA mandates that gasoline retailers "display in
a clear and conspicuous manner, at the point of sale to ulti-
mate purchasers of automotive fuel, the automotive fuel rating
of such automotive fuel . . ." 15 U.S.C. § 2822(c). The PMPA
instructs the FTC to promulgate rules prescribing "a uniform
method of displaying the automotive fuel rating of automotive
fuel at the point of sale to ultimate purchasers." 15 U.S.C.
§ 2823(c)(1)(B).

[7] In response, the FTC promulgated the Posting Rule that
applies to ". . . refiner[s], importer[s], producer[s], distribu-
tor[s], [and] retailer[s] of automotive fuel[,]" 16 C.F.R.
§ 306.2, and contains detailed instructions for the "posting of
automotive fuel ratings in or affecting commerce . . ." 16
C.F.R. § 306.1. The Posting Rule comprehensively regulates
all labeling, disclosure, and rating requirements to be dis-
played at the point of sale to retail gasoline customers. *See* 16
C.F.R. § 306.10. The Posting Rule includes sample octane
labels, and delineates their specific layout, type size and set-
ting, colors, and content. *See* 16 C.F.R. § 306.12. The Posting
Rule expressly limits label content: "No marks or information
other than that called for by this rule may appear on the
labels." 16 C.F.R. § 306.12(d).

[8] The PMPA contains a broad preemption against state
and local laws and regulations addressing any acts or omis-

sions covered by the PMPA, "unless such provision of such law or regulation is *the same as* the applicable provision of this subchapter." 15 U.S.C. § 2824(a) (emphasis added). The Posting Rule incorporates this preemption provision. *See* 16 C.F.R. § 306.4(a).

[9] Among other remedies, Plaintiffs seek to compel Defendants to add a corrective disclosure at the point of sale alerting retail gasoline customers to the residual fuel situation. The district court concluded that the additional corrective disclosure sought by Plaintiffs was not "the same as" the specific labeling requirements prescribed in the PMPA and the Posting Rule.[10] 15 U.S.C. § 2824(a); 16 C.F.R. § 306.4(a). Plaintiffs argue that their proposed notice, alerting customers to the residual fuel situation, does not conflict with federal law because the notification would not be displayed on the label itself and would not mention octane ratings. This argument is not persuasive. Plaintiffs' intended disclosure remedy is designed to warn customers at the point of sale that the grade of fuel they purchase may or may not actually be delivered, regardless of its posted fuel grade. This notice would have the effect of challenging the accuracy and undermining the uniformity of federal octane labeling regulations promulgated by the FTC. We agree with the district court that Plaintiffs' FAL claim is expressly preempted.[11]

---

[10]Another district court recently reached a contrary conclusion in a similar action brought under the UCL and FAL, factually distinguishing the claim in that case from the instant matter. *See VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1081-83 (E.D. Cal. 2009) ("The *Alvarez* court found that plaintiff's false advertising claim was preempted because we cannot require Defendants to disclose more information than is expressly required by these provisions. Here, however, Plaintiff is not requesting that Defendant disclose more information than required, only that Defendant's disclosure be accurate and truthful."). *Id.* at 1083 (citation and internal quotation marks omitted)). *But see Jurman v. Sun Co., Inc. (R. & M.)*, 671 N.Y.S.2d 218 (N.Y. App. Div. 1998) (finding claims preempted by the PMPA).

[11]To the extent Plaintiffs' other statutory claims seek *relief* that would require a corrective disclosure at the point of sale, we conclude that they are also preempted by federal law.

## B.   Denial of Leave to Amend

**[10]** "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency . . ." *Telesaurus VPC, LLC*, 623 F.3d at 1003 (citations and internal quotation marks omitted). Here, even if Plaintiffs were permitted to add an allegation that other technology exists that would enable Defendants to comply with their alleged common law and statutory obligations to customers while also complying with California regulatory mandates, this additional allegation would not alter the fundamental flaw in the theory of Plaintiffs' lawsuit. That flaw is that Defendants' current conduct—using dispenser designs that cause the residual fuel problem—is lawful in California. There may well be a better dispenser design, and California regulators may consider implementing that design in the future to remedy the residual fuel situation. However, under the current statutes and regulations, Defendants' conduct does not support a claim for which we may grant relief. Accordingly, further amendment would be futile, and the district court did not abuse its discretion in denying leave to amend.

**AFFIRMED**.