Opinion by Judge WALLACE; Dissent by Judge NOONAN.
OPINION
WALLACE, Senior Circuit Judge:
Richard and Mary Lou Stengel brought several state causes of action in Arizona state court against Medtronic Incorporated (Medtronic) for injuries sustained by Richard Stengel (Stengel) from his use of a pain pump manufactured by Medtronic. Medtronic timely removed the case to the United States District Court for the District of Arizona. The district court dismissed the Stengels’ claims as preempted by federal law and the Stengels appealed. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
I.
Medtronic’s pain pump is a medical device that infuses prescription medication through a catheter into the intrathecal space within the spine to help control severe pain. In 1988, the Food and Drug Administration (FDA) gave premarket approval as a Class III medical device for Medtronic’s SynchroMed Pump & Infusion System. In 1999, the FDA gave supple *1161 mental premarket approval for Medtronic’s SynchroMed EL Pump and intrathecal catheter, which are the versions of Medtronic’s device at issue in this action.
In 2000, Stengel had a Medtronic pump surgically implanted in his abdomen and began receiving medication through the catheter tip implanted in his spine. In 2005, Stengel began experiencing ascending paralysis in his lower extremities caused by a granuloma (a type of inflammation) in his spine that had formed at the tip of the catheter. Stengel’s doctors surgically removed the hardware and most of the granuloma, but not in time to prevent the granuloma from rendering Stengel permanently paraplegic.
The Stengels’ complaint alleged four generic claims under Arizona law: negligence, breaches of express and implied warranties, and strict liability. The district court granted Medtronic’s motion to dismiss the complaint on the ground that federal law expressly preempted these claims.
While the motion to dismiss was pending, the Stengels moved for leave to amend their complaint to re-allege the same four claims under the newly-proffered theory that Stengel’s injury was caused by Medtronic’s failure to implement procedures to evaluate complaints about the pump and failure to report information to the FDA, as was required by FDA regulations. The Stengels alleged that if Medtronic had complied with the regulations, Medtronic would have warned physicians about the newly-discovered danger that the pump might cause inflammation, which would have allowed a quicker diagnosis of Stengel’s symptoms and prevented his paralysis. The Stengels’ motion for leave to amend was denied on the ground that this “failure-to-warn” claim was impliedly preempted.
We review de novo the district court’s holding that all of the Stengels’ asserted claims were either expressly or impliedly preempted. Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 553 (9th Cir.2010). We review its denial of leave to amend for abuse of discretion. Alvarez v. Chevron Corp., 656 F.3d 925, 931 (9th Cir.2011).
II.
In 1976, Congress amended the Food, Drug and Cosmetic Act (FDCA) by enacting the Medical Device Amendments of 1976 (MDA), Pub.L. No. 94-295, 90 Stat. 539 (codified as amended at 21 U.S.C. § 360c et seq.). The MDA added a preemption clause to the FDCA which provides, subject to limited exceptions, that
no State ... may establish ... with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under [the FDCA], and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under [the FDCA].
21 U.S.C. § 360k(a).
The Supreme Court has examined the extent to which this preemption clause “bars common-law claims challenging the safety and effectiveness of a medical device given premarket approval by the [FDA].” Riegel v. Medtronic, Inc., 552 U.S. 312, 315, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). The Court reviewed the “rigorous” premarket approval process for Class III medical devices:
A manufacturer must submit what is typically a multivolume application. It includes, among other things, full reports of all studies and investigations of the device’s safety and effectiveness that have been published or should reason *1162 ably be known to the applicant; a full statement of the device’s components, ingredients, and properties and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device; samples or device components required by the FDA; and a specimen of the proposed labeling. Before deciding whether to approve the application, the agency may refer it to a panel of outside experts and may request additional data from the manufacturer.
The FDA spends an average of 1,200 hours reviewing each application and grants premarket approval only if it finds there is a reasonable assurance of the device’s safety and effectiveness.
Id. at 317-18, 128 S.Ct. 999 (internal citations and quotation marks omitted).
The premarket approval process includes review of the device’s proposed labeling to evaluate safety and effectiveness under the conditions of use set forth in the label. Id. at 318, 128 S.Ct. 999. After a device is approved, “the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness.” Id. at 319, 128 S.Ct. 999. Any changes must be made after FDA approval of an application for supplemental premarket approval, “to be evaluated under largely the same criteria as an initial application.” Id.
The Court then held that the premarket approval process for Class III devices imposed federal “requirements” applicable to the approved device, that common law tort duties constituted state “requirements,” and that the “safety and effectiveness” of the device was the subject of the plaintiffs common law claims. Id. at 322-23, 128 S.Ct. 999. The Court recognized that section “360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations” because “the state duties in such a case ‘parallel,’ rather than add to, federal requirements.” Id. at 330, 128 S.Ct. 999, quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 495, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Because the plaintiff asserted that the defendant’s device “violated state tort law notwithstanding compliance with the relevant federal requirements,” the Court held their claims to be expressly preempted. Id.
The Stengels’ claims, as they appear in the initial complaint, are expressly preempted under section 360k and Riegel. The claims generally challenged the safety and effectiveness of Medtronic’s pump without any hint of an allegation that Medtronic’s conduct violated FDA regulations. To be successful, the claims would have required the trier of fact, as a matter of state tort law, to conclude that the device should have either been designed differently from what the FDA required through premarket approval, or labeled with warnings different from what the FDA required. Therefore, the district court correctly dismissed the Stengels’ initial complaint.
The claims alleged in Stengels’ proposed amended complaint are also expressly preempted to the extent they rely on the theory that Medtronic should have sent a medical device correction notice to physicians, whether or not the FDA ordered it, because FDA regulations permitted Medtronic to send the notice without prior FDA approval. See 21 C.F.R. § 814.39(d). The Seventh Circuit has addressed this precise question. It held: “Where a federal requirement permits a course of conduct and the state makes it obligatory, the state’s requirement is in addition to the *1163 federal requirement and thus is preempted.” McMullen v. Medtronic, Inc., 421 F.3d 482, 489 (7th Cir.2005). We agree that such a requirement is expressly preempted.
III.
However, portions of the claims in the Stengels’ proposed amended complaint could be interpreted to survive express preemption. The proposed complaint alleged:
Under federal law and regulation, [Medtronic] was under a continuing duty to monitor the product after premarket approval and to discover and report to the FDA any complaints about the product’s performance and any adverse health consequences of which it became aware and that are or may be attributable to the product.
Substitute Amended Complaint, ¶ 13, ECF No. 22-1 (citing 21 U.S.C. § 360i (requirement to maintain and submit information as required by regulation); 21 C.F.R. § 803.50 (requirement to submit reports); 21 C.F.R. § 820.198(a) (requirement to establish procedures for reviewing complaints)). Because of Medtronic’s negligent failure to perform these duties, the Stengels alleged, its pump became defective and unfit for its intended purpose. Id. ¶20. To the extent Medtronic’s alleged violations of FDA regulations are actionable under state law, the state obligations parallel the federal requirements, and thus are not expressly preempted.
Nonetheless, this theory in the Stengels’ amended complaint which survives express preemption ultimately fails because the claims are impliedly preempted under Buckman Co. v. Plaintiffs’ Legal Committee, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). In Buckman, the plaintiffs alleged that the defendant made fraudulent misrepresentations to the FDA regarding the intended use of its bone screws and that the devices were improperly given market clearance as a result. Id. at 346-47, 121 S.Ct. 1012. The Supreme Court held that the claims were preempted because, although the defendant had allegedly violated federal requirements, allowing the plaintiffs to bring a state cause of action to remedy the injuries caused by the violations would interfere with the congressional scheme. Id. As the Court explained, “the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and ... this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives” which “can be skewed by allowing fraud-on-the-FDA claims under state tort law.” Id. at 348,121 S.Ct. 1012.
The Court observed that “[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions.” Id. at 349 n. 4, 121 S.Ct. 1012, citing 21 U.S.C. § 337(a) (no private right of action to enforce FDCA). The Court held that “[s]tate-law fraud-on-the FDA claims inevitably conflict with the FDA’s responsibility to police fraud consistently with the Administration’s judgment and objectives.” Id. at 350, 121 S.Ct. 1012. The Court distinguished Medtronic, Inc. v. Lohr, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), in which the Court previously held certain negligence claims not to be expressly preempted under the FDCA. 531 U.S. at 352-53, 121 S.Ct. 1012. It reasoned that “the [Lohr] claims arose from the manufacturer’s alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements,” whereas the Buckman fraud claims “exist solely by vir *1164 tue of the FDCA disclosure requirements.” 531 U.S. at 352-53,121 S.Ct. 1012.
There is no meaningful distinction between the Stengels’ failure-to-wam claims and the “fraud-on-the-FDA” claims held to be preempted in Buckman. Therefore, following Buckman, we hold that the Stengels’ claims are impliedly preempted.[1] The Stengels’ theory is that if Medtronic had acted with reasonable care in complying with the regulations that required it to provide information to the FDA, the FDA would have required Medtronic to warn physicians about the danger of inflammation connected to its pump and Stengel could have avoided the injury caused by the pump. See 21 U.S.C. § 360h(a). This is precisely the same theory that was rejected in Buckman. The only difference is that, in Buckman, the defendant allegedly misinformed the FDA overtly by providing false information, whereas here the defendant allegedly misinformed the FDA tacitly by failing to report information that it had a duty to report. The policing of such conduct in both instances is committed exclusively to the federal government, and recognizing a state cause of action based on such conduct would conflict with the statutory scheme established by Congress. Cf. Cupek v. Medtronic, Inc., 405 F.3d 421, 423-24 (6th Cir.2005) (negligence per se claim due to “failure to comply with [FDA] conditions of approval” preempted because it was a “disguised fraud on the FDA claim”).
The federal regulations that Medtronic is alleged to have violated impose detailed reporting requirements with respect to a broad category of information. For example, a manufacturer must report to the FDA information the manufacturer becomes aware of, from any source, that reasonably suggests that its device may have caused or contributed to a serious injury. 21 C.F.R. § 803.50. This report must be made no later than 30 days after the day the manufacturer receives or becomes aware of the information. Section 803.50(a). The FDA considers information that is reasonably known to the manufacturer to include any information that the manufacturer can obtain by contacting the initial reporter or by testing the device. Section 803.50(b). A manufacturer must investigate each adverse event and evaluate the cause of the event. Section 803.50(b)(3). If the manufacturer cannot submit complete information in a report, it must provide a statement explaining why the information was incomplete and the steps taken to obtain the information. Id. Regulations also require a manufacturer to maintain complaint flies and establish procedures for receiving, reviewing, and evaluating complaints by a formally designated unit. 21 C.F.R. § 820.198. These procedures must ensure that all complaints are processed in a uniform and timely manner, and that oral complaints are documented upon receipt. Section 820.198(a). A manufacturer must review and evaluate all complaints to determine whether an investigation is necessary, and if it chooses not to investigate, must record its reasons and the name of the individual responsible for a decision not to investigate. Section 820.198(b). When a complaint describes an event that must be reported to the FDA, the records of the investigation must contain enumerated categories of information and must be maintained in a separate portion of the complaint flies or otherwise clearly identified. Section 820.198(d), (e). *1165 If the FDA determines that a notification to physicians is necessary to eliminate an unreasonable risk of substantial harm to the public health, the FDA can order the manufacturer to issue the notification after consulting with the manufacturer. 21 U.S.C. § 360h(a).
In contrast, Arizona common law imposes liability on a manufacturer that fails to exercise reasonable care to inform a consumer of its product’s dangerous condition or of the facts that make the product likely to be dangerous, if the manufacturer knows or has reason to know that the product is likely to be dangerous and has no reason to believe that the consumer will realize its dangerous condition. Anguiano v. E.I. Du Pont De Nemours & Co., Inc., 44 F.3d 806, 811-12 (9th Cir.1995). The federal regulations that Medtronic is alleged to have violated, which require investigation and disclosure to the FDA in a particular manner so that the FDA can make a decision whether notification of consumers is necessary, are not tied to this general duty to warn consumers under Arizona law. Thus, the Stengels’ failure-to-warn claims, to the extent they survive express preemption, exist solely by virtue of the FDCA disclosure requirements and are, therefore, impliedly preempted.
Nothing in our holding requires preemption of all state claims challenging the safety of a medical device that has received premarket approval. But as another court aptly put it, it is “a narrow gap through which a plaintiffs state-law claim must fit if it is to escape express or implied preemption.” In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig., 623 F.3d 1200, 1204 (8th Cir.2010), quoting Riley v. Cordis Corp., 625 F.Supp.2d 769, 777 (D.Minn.2009). At least some claims have proven capable of passing through that gap. For instance, in Bausch v. Stryker Corp., the Seventh Circuit held that state claims based on manufacturing defects were not preempted under Buck-man because, “[w]hile there may not be a ‘traditional state tort law1 claim for an ‘adulterated’ product in so many words, the federal definition of adulterated medical devices is tied directly to the duty of manufacturers to avoid foreseeable dangers with their products by complying with federal law.” 630 F.3d 546, 557 (7th Cir.2010). We offer no opinion as to whether a particular state claim that is tied directly to compliance with federal law would be preempted under Buckman. In this case, the duty of manufacturers under federal law to report to the FDA information regarding their devices is not tied directly to the duty of manufacturers under state law to warn consumers of a device’s dangerous condition. On the contrary, the enforcement of the duty to report is an element of the federal scheme that is committed solely to the federal government.
The Stengels contend that Buckman is distinguishable because it only requires preemption of fraud-on-the-FDA-type claims where the FDA has not previously determined that the .manufacturer violated federal reporting requirements. A warning letter from the FDA to Medtronic was attached to the proposed amended complaint, and shows that the FDA had already determined that Medtronic violated its federal disclosure obligations. Thus, the Stengels contend, they could prove their claims without second-guessing the FDA’s decision making.
We are not convinced by the Stengels’ attempt to distinguish Buckman because it is based on the concurrence in Buckman, which disagreed with the majority specifically because the majority did not take the position now advocated by the Stengels. See 531 U.S. at 354, 121 S.Ct. 1012 (Stevens, J., concurring in the judgment). The Buckman majority’s rationale, unlike the *1166 concurrence’s, was not solely based on a desire to avoid jurors second-guessing the FDA’s decision making; it was also based on the idea that state fraud-on-the-FDA claims would “exert an extraneous pull on the scheme established by Congress,” in which the FDA was supposed to enforce the FDCA’s disclosure requirements. Id. at 358, 121 S.Ct. 1012 (majority opinion). The majority’s rationale remains relevant in this case, even where the FDA has issued a warning letter describing Medtronic’s regulatory violations.
We acknowledge that there is a division among the circuits whether state failure-to-warn claims are preempted by Buck-man. On one hand, the Eighth Circuit has held that federal law impliedly preempts a state failure-to-warn claim to the extent the claim is based on the defendant’s failure to provide the FDA with sufficient information and failure to file adverse event reports timely. See In re Medtronic, 623 F.3d at 1205-06. On the other hand, the Fifth Circuit has held that a state failure-to-warn claim is not preempted. See Hughes v. Boston Scientific Corp., 631 F.3d 762, 775-76 (5th Cir.2011).
Hughes is not persuasive. First, it erroneously distinguished Buckman on the ground that the plaintiffs in Buckman “were attempting to assert a freestanding federal cause of action,” Hughes, 631 F.3d at 775, notwithstanding that Buckman described the claims at issue as seeking damages “under state tort law,” Buckman, 531 U.S. at 343, 121 S.Ct. 1012. Buckman’s preemptive reach clearly extends to state law causes of action. See Nathan Kimmel, Inc. v. DowElanco, 275 F.3d 1199, 1206 (9th Cir.2002) (interference with prospective economic advantage claim preempted); see also PhotoMedex, Inc. v. Irwin, 601 F.3d 919, 924 (9th Cir.2010) (“The Supreme Court made clear in Buck-man that [21 U.S.C. § 337(a) ] also limits the ability of a private plaintiff to pursue claims under state law theories where such claims collide with the exclusive enforcement power of the federal government”).
Second, Hughes distinguished Buckman because the claims “[did] not depend on speculation that the FDA would have taken any particular regulatory action in response to violation of the regulations at issue, as in Buckman.” Hughes, 631 F.3d at 775. But this reasoning follows the rationale adopted by Justice Stevens in his concurrence. See 531 U.S. at 354, 121 S.Ct. 1012 (Stevens, J., concurring in the judgment). The Buckman majority never adopted this limitation on its holding.
Third, Hughes argued that allowing preemption would be inconsistent with Riegel’s recognition that “parallel” claims are not preempted. 631 F.3d at 775. But Riegel established only that such claims would not be expressly preempted by section 360k. 552 U.S. at 330, 128 S.Ct. 999. Since the claims before the Court in Riegel failed under express preemption, the Court had no reason to discuss implied preemption at all. See id. We join the Eighth Circuit in holding that a failure-to-warn claim based on failure to provide disclosures to the FDA is impliedly preempted.
IV.
Finally, we turn to the additional grounds for reversal offered by the Stengels. They argue that the district court should have allowed them to amend their complaint after removal to conform to the federal pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, the district court did not dismiss the Stengels’ complaint on the ground that it did not conform to the Twombly stan *1167 dard, but instead on the ground that the Stengels’ claims were preempted.
Next, the Stengels contend that the district court erred by failing to convert Medtronic’s motion to dismiss into a motion for summary judgment and then refusing to grant a continuance for discovery under Federal Rule of Civil Procedure 56(f).[2] This contention fails as well. The district court took judicial notice of the fact that Medtronic’s pain pump received premarket approval as demonstrated by FDA records. A court may consider facts extraneous to a complaint on a motion to dismiss, without converting the motion into one for summary judgment, if such facts are judicially noticeable under Federal Rule of Evidence 201. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.2001). A court may take judicial notice of a fact that “is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed.R.Evid. 201(b). Because the accuracy of FDA records cannot reasonably be questioned, the premarket approval status of Medtronic’s pump is a fact subject to judicial notice. See Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir.2011) (affirming judicial notice of FDA letter granting premarket approval). The district court thus did not abuse its discretion in considering this fact in connection with the motions to dismiss.
Finally, the Stengels contend that the district court erred by not ruling on their request to take judicial notice of Medtronic’s correction letter and a document showing that the pump was ultimately recalled in 2008. But the district court did not need to take judicial notice of the correction letter because that document was included as an exhibit to the proposed amended complaint and, therefore, was part of the pleadings. Moreover, regardless of whether judicial notice would have been proper, it was not necessary because the facts that Medtronic sent a correction letter and that the FDA issued a recall on the pump do not affect the preemption analysis. Any error in the district court’s failure to rule on the request for judicial notice was harmless and, therefore, is not reversible. See Sanchez v. Aerovias De Mexico, S.A. De C.V., 590 F.3d 1027, 1029 (9th Cir.2010).
V.
We recognize that it may seem harsh to deny compensation to a person who alleges serious injury from a medical device. But such is the direction from the Supreme Court for cases like the one before us. We are required to follow the Court.
To the extent the Stengels’ claims are based on the theory that state law required Medtronic to warn consumers about the dangerous condition of its pain pumps without first receiving an order to do so from the FDA, the state law establishes a requirement different from the requirements of the FDCA. See 21 U.S.C. § 360k; Riegel, 552 U.S. at 325, 128 S.Ct. 999. To the extent the Stengels’ claims are based on a theory that Medtronic caused them injury by failing to comply with its duty to report information to the FDA, their claims threaten to skew the delicate balance of statutory objectives sought to be achieved by the FDCA. See Buckman, 531 U.S. at 348, 121 S.Ct. 1012. Congress has established the premarket approval process as an important balance between getting help to patients who need it as soon as possible and protecting patients who will use the newly proposed help. Those who *1168 have benefitted from this congressional balancing are not before us, but they reap the benefit of Congress’s insights. It is a balance we must observe. Any change must be made by Congress itself.
Therefore, we hold that even if some of the Stengels’ claims can be interpreted to escape express preemption, they cannot be interpreted to escape implied preemption. The district court correctly held that the Stengels’ proposed amendment was futile, and therefore did not abuse its discretion in denying leave to amend. See Alvarez, 656 F.3d at 935.
AFFIRMED.

. The dissent argues that because the Stengels' claims are not expressly preempted under Lohr, they cannot be impliedly preempted under Buckman. This is not the law. Lohr does not determine the scope of implied preemption because it never considered the issue.

. In the 2010 amendments to the Federal Rules of Civil Procedure, the provisions of Rule 56(f) were moved to Rule 56(d) without substantial change.